Joseph J. Sullivan III (JS 1889)
Sheindlin & Sullivan, LLP
350 Broadway, 10th Floor
New York, NY 10013
(646) 201-9120

**ECF CASE**

Attorneys for Plaintiff
STEPHANIE CALLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
STEPHANIE CALLA,

               Plaintiff,

    v.

THE CITY OF NEW YORK,
NEW YORK STATE DEPARTMENT OF
MOTOR VEHICLES,
P.O. JANE DOE,
in her individual and official capacity,

               Defendants.
------------------------------------X

Index No. 07 CV 4781

**COMPLAINT**

Plaintiff STEPHANIE CALLA ("Calla") by her attorneys, Sheindlin & Sullivan, LLP, alleges for her Complaint, the following:

### INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and under the common law of the State of New York, against Police Officer ("P.O.") Jane Doe in her individual and official capacity and against the City of New York (the "City") and the New York State Department of Motor Vehicles ("DMV"). Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law.

2. It is alleged that Calla paid a fine and part of a surcharge for a traffic infraction. New York State Department of Motor Vehicles ("DMV") failed to notify Calla that she had not paid the full amount of the surcharge for the traffic infraction, and Calla believed that she had paid the full amount. As a result of DMV's acceptance of Calla's credit card payment and failure to notify Calla that she had not paid the full amount of the surcharge, she continued to operate her motor vehicle.

3. On or about March 7, 2006, Calla was arrested for Aggravated Unlicensed Operation in the Third Degree and Unlicensed Driving, strip searched by Police Officer Jane Doe, and incarcerated for approximately 36 hours. During her incarceration, Calla, a single mother, received inadequate liquids and food, was prevented from sleeping, denied medical attention, and not allowed to contact her son's school to inform the school that she would not be available to pick up her child at the end of the school day.

## PARTIES

4. Calla was at all material times a resident of New York, New York, and of full age. As of the date of her arrest on March 7, 2006, Calla was a single mother with a five year old son and the Executive Assistant to the Chief Operating Officer and Chief Executive Officer of a French bank.

5. Defendant Officer Jane Doe was at all times relevant to this complaint duly appointed and acting as an officer of the police department of the City of New York, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of New York and/or the City of New York.

6. The City is a municipal corporation and the public employer of Police Officer Jane Doe.

7. The New York State Department of Motor Vehicles is an agency of the State of New York.

## FACTS

8. On or about August 15, 2004, Calla received a summons for "improper cell phone use" while operating an automobile. According to an Abstract of Driving Record of New York State, the fine for Calla's violation was $40.00. See Abstract of Driving Record, attached hereto as Exhibit A.

9. On or about October 27, 2004, Calla paid DMV $65.00 to satisfy the above-referenced fine and to pay the accompanying surcharge. See DMV printout, attached hereto as Exhibit B.

10. Upon information and belief, DMV did not notify Calla that she owed any additional funds and then suspended her motor vehicle license on or about November 28, 2004. See Exhibit A.

11. On or about July 11, 2005, Calla received a summons for a traffic infraction for operating a motor vehicle without wearing a seat belt. See Exhibit A. The police officer who issued Calla the summons did not inform her that her license was suspended, and DMV did not subsequently inform Calla that her license was suspended for failure to pay the entire surcharge for a 2004 traffic infraction. Calla paid the fine and surcharge for the July 11, 2005 traffic infraction.

12. On or about March 7, 2006, Calla was arrested for Aggravated Unlicensed Operation in the Third Degree and Unlicensed Driving for operating a motor vehicle in front of 27 St. Mark's Place in New York, NY at about 11 p.m. while her license was suspended. See Criminal complaint, attached hereto as Exhibit C.

13. The arresting officer requested that Calla step out of her vehicle, turned Calla around, and handcuffed her.

14. The arresting officer informed Calla that she would appear in court the next morning before a judge, placed her in a van with several male prisoners for at least an hour, and then brought her to a police station.

15. At the police station, Calla was separated from men who had been arrested. Handcuffs were removed from the male arrestees, and they were placed in a cell. Calla was placed on a chair in the lobby for over an hour with her hands handcuffed behind her back.

16. Eventually, a female police officer took Calla to the bathroom, patted down her clothing, and then put Calla in a cell without any handcuffs.

17. The arresting officer informed Calla that she was permitted to make one phone call. Calla telephoned her employer and informed him that she hoped to be released in the morning.

18. After a number of hours at the police station, Calla was transported downtown to another location and placed in a cell with other women.

19. While in custody, Calla was placed in a separate room and P.O. Jane Doe told Calla to pull down her pants and open her shirt. P.O. Jane Doe then searched Calla's clothing, patted her body, and pulled her bra to her neck exposing her breasts and then left Calla alone in the room without any further instructions. Calla dressed herself and then was returned to a cell with other women.

20. After waiting until about 11 a.m. on March 8, 2006, Calla inquired when she would be released. Calla was informed that she would be held for up to 72 hours.

21. Calla, a single mother, requested a quarter so that she could telephone her son's school or her boyfriend so that someone could pick up her son from school. The officers

refused to give her a quarter. Eventually, one of the incarcerated women in the cell with her gave her a quarter to make a phone call.

22. During the approximately 36 hour period in which Calla was incarcerated, she was only offered two small cartons of milk and an inedible piece of bread with some sort of spread. When Calla requested additional food, her request was denied. Calla was also not able to sleep because the lights were on for the entire 36 hours that she was incarcerated and, approximately, every two hours, Calla had to stand up to be counted and the floors were cleaned with dirty mops.

23. As a result of a lack of sleep, food, and dehydration, Calla experienced severe headaches while in custody. When Calla requested water, she was informed that she should drink out of a water fountain into which an, apparently, sick drug addict was spitting. When Calla requested Tylenol, she was informed that if she needed any medication she would be sent to Bellevue Hospital and her jail stay would be prolonged by three days.

24. Calla was incarcerated for a second night when the New York City Police Department held her in order to receive the results of Calla's fingerprints from Albany.

25. Aggravated Unlicensed Operator in the Third Degree is not a statute that requires that the defendant be fingerprinted in New York.

26. On March 9, 2006, Calla was arraigned at about 11 A.M. and released from custody.

27. On July 20, 2006, the case against Calla was adjourned in contemplation of dismissal.

28. Subsequently, the case was dismissed six months later by operation of law.

29. At no time during the above events was Calla intoxicated, incapacitated, armed with any weapon, or a threat to the safety of herself or others, or disorderly.

30. At all times during the above events, Calla believed that she had committed no crimes since New York State had previously accepted payment from her in satisfaction of the summons issued on August 15, 2004.

31. At all times during the events described above, P.O. Jane Doe and other officers were engaged in a joint venture. The individual officers each assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

32. As a direct and proximate result of the said acts of defendants, Calla suffered the following injuries and damages:

    a. Violation of her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and the New York State Constitution to be free from an unreasonable search and seizure;

    b. Loss of her physical liberty;

    c. Physical pain and suffering and emotional trauma and suffering, requiring the expenditure of money for treatment;

    d. Lost wages;

    e. Harm to her reputation; and

    f. Attorneys' fees.

33. The actions of defendants violated the following clearly established and well settled federal and state constitutional rights of Calla:

    a. Freedom from the unreasonable seizure of her person;

  b. Freedom from the use of excessive, unreasonable and unjustified force against her person;

  c. Freedom from unreasonable strip searches;

  d. Freedom from cruel and degrading conditions of incarceration.

 34. Defendants acted maliciously, willfully and wantonly with reckless indifference to Calla's constitutional rights.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1983 AND
## NYS CONSTITUTION AGAINST INDIVIDUAL DEFENDANT

 35. Paragraphs 1 through 34 are incorporated herein by reference as though fully set forth.

 36. Calla claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Officer Jane Joe for violation of her constitutional rights under color of law by conducting an unlawful strip search of her person.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1983 AND
## NYS CONSTITUTION AGAINST THE CITY OF NEW YORK

 37. Paragraphs 1 through 34 are incorporated herein by reference as though fully set forth.

 38. Calla claims damages for injuries set forth above under 42 U.S.C. § 1983 against the City for violation of her constitutional rights under color of law.

 39. At all times hereinafter mentioned, the actions of defendant City, its agents, servants and/or employees, and P.O. Jane Doe constitute an unlawful search and imprisonment which deprived Calla of her rights, privileges and immunities as guaranteed under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, the New York State Constitution and 42 U.S.C. Section 1983 of the Civil Rights Act.

40. At all times hereinafter mentioned, the conduct of defendant City, its agents, servants and/or employees, and P.O. Jane Doe, which was either the result of an official policy or unofficial custom, deprived Calla of her liberty in violation of her civil rights.

41. At all times hereinafter mentioned and upon information and belief, the actions of defendant City, its agents, servants and/or employees, and P.O. Jane Doe were undertaken under color of law and would not have existed but for the use of their official power.

42. At all times hereinafter mentioned and upon information and belief, defendant City failed, as a matter of policy, to take steps to terminate the unlawful practices described in this complaint and discipline or otherwise supervise properly its agents, servants and/or employees who engaged in such practices.

43. At all times hereinafter mentioned and upon information and belief, defendant City failed to train properly and effectively its agents, servants and/or employees, including P.O. Jane Doe, with regard to proper constitutional and statutory limits on the exercise of their authority, and such failure continues to this day.

44. At all times hereinafter mentioned and upon information and belief, defendant City sanctioned the policy and practices described in this complaint through its deliberate indifference to the effect of such policy and practices upon the constitutional rights of Calla and others similarly situated.

45. At all times hereinafter mentioned and upon information and belief, the motivations of defendant City, its agents, servants and/or employees, and P.O. Jane Doe were in contravention of the United States Constitution and the Constitution of the State of New York.

46. As a result of these deprivations of constitutional and civil rights, Calla suffered loss of liberty, shame, humiliation, degradation and damage to her reputation in the community.

## COUNT III
## NEGLIGENCE AGAINST NYS DEPARTMENT OF MOTOR VEHICLES

47. Paragraphs 1 through 46 are incorporated herein by reference as though fully set forth.

48. On or about August 15, 2004, Calla received a summons for improper cell phone use while operating an automobile.

49. On or about October 27, 2004, Calla paid the summons by credit card and New York State only entered payment of $65 to satisfy the above summons.

50. New York State DMV never informed Calla that she had not paid the full surcharge for the above summons.

51. Calla relied on DMV's acceptance of her credit card payment as satisfaction of the summons and continued to operate her motor vehicle.

52. Calla's license was suspended on November 28, 2004.

53. As a result of DMV's acceptance of Calla's summons payment and negligent failure to alert her of her incomplete payment, Calla was arrested on or about March 7, 2007 for operating a motor vehicle with a suspended license.

WHEREFORE, plaintiff demands judgment as follows:

A. Awarding compensatory damages to plaintiff against the defendants, jointly and severally;

B. Awarding plaintiff pre- and post-judgment interest at the highest rate allowed by law;

C. Awarding plaintiff her costs and disbursements incurred in prosecution of this action;

D. Awarding plaintiff her attorneys' fees on Counts I and II;

E. Awarding plaintiff punitive damages;

F.   Granting plaintiff such other and further demand as the Court deems just and proper.

The plaintiff hereby demands a jury trial.

*Joseph Sullivan*
Joseph J. Sullivan III (1889)
Sheindlin & Sullivan, LLP
350 Broadway, 10th Floor
New York, NY 10013
(646) 201-9120

Attorneys for Plaintiff
STEPHANIE CALLA

Dated: New York, New York
       June 5, 2007

10

**EXHIBIT A**

State of New York DEPARTMENT OF MOTOR VEHICLES, Empire State Plaza, Albany, New York 12228

## ABSTRACT OF DRIVING RECORD

```
Document # I7968230                              Total Fee Paid $    0.00
PRINT DATE:  3/08/2006 TIME: 07:13:64  OPERATOR: MC  OFFICE: MDA


                                                 CLIENT ID#: 320198570
CALLA, STEPHANIE                           DOB: 08/21/1971   SEX: F
33  CODINGTON AVE
N PLAINSFIELD NJ  07060                    COUNTY: OUTS
                                           MI #: C01425 66440 565470-71



NO NY LICENSE

SUSP/REV SUMMARY: TOTAL   1 (SCOFF   1 ON   1 DATES) JUDGEMENT $   0

******************        SUSPENSIONS/REVOCATIONS        ******************
 SUSPENSION: 11/28/2004 FAILURE TO PAY FINE   ORDER #: K231936
   LOCATION: NEW YORK COUNTY, MANHATTAN N. ADM. ADJ.

******************       CONVICTIONS/BAIL FORFEITURES    ******************
CONVICTION: NO SEAT BELT DRIVER
 VIOLATION: 07/11/2005           CONVICTED ON: 08/11/2005
 LOCATION: NEW YORK COUNTY, MANHATTAN N. ADM. ADJ.
 PENALTY: FINE- $40
 COMM VEH: UNKNOWN   HAZMAT: UNKNOWN

CONVICTION: OP MV - MOBILE PHONE
 VIOLATION: 08/15/2004           CONVICTED ON: 10/27/2004
 LOCATION: NEW YORK COUNTY, MANHATTAN N. ADM. ADJ.
 PENALTY: FINE- $40
 COMM VEH: UNKNOWN   HAZMAT: UNKNOWN

CONVICTION: NO SEAT BELT DRIVER
 VIOLATION: 09/10/2003           CONVICTED ON: 12/22/2003
 LOCATION: NEW YORK COUNTY, MANHATTAN N. ADM. ADJ.
 PENALTY: FINE- $40
 COMM VEH: UNKNOWN   HAZMAT: UNKNOWN

                         *** END OF RECORD ***
```

This is to certify that this document is a true and complete copy of an electronic record on file in the New York State Department of Motor Vehicles, Albany, New York. The record was made in regular course of New York State Department of Motor Vehicles daily business. It is the business of the New York State Department of Motor Vehicles to create and maintain the records of drivers in the state of New York. Entries in this document are made at the time the recorded transactions or events took place or within a reasonable time thereafter. The person who reports the information is under a business duty to do so accurately.

ABS-3 (12/05)

Executive Deputy Commissioner of Motor Vehicles

**EXHIBIT B**

```
10:47
ENTER ANY ONE OF ACTIONS SPECIFIED ON HELP SCREEN AND PRESS ENTER KEY:
TICKET NUMBER: 421923193E   LOC: MANHATTAN NO.        TKT BATCH: 0413292077
CALLA, STEFHANIE      08/21/71 F     C01425-65440-565470-71       ID: 220198570
3E CODDINGTON AVE      LIC: UNKNOWN   UNKNOWN                     EXPIRES:    /
N PLAINSFIELD, NJ 07060                                           OUT OF STATE NJ
VIOL: 1225C2A IMPRPR CELLPHONE USE   ISSUED ON: 08/15/04 RETURN DATE: 10/04/04
                                                          APPEAR-DATE: 11/24/04

OFFICER: RIVERA, RAYMOND
    NCID: 23032
COMMAND: 0023  OFFICER ID: 918517
AMT-PAID-INCLUDES-SURCH    AMT PAID INCL STF:$ 35      O/B: C02297220055716
CLOSED: GUILTY-PLEA-W/PAY
   ACTIVITY      DATE      LOCATION   OPER    FINE   ALJ   EFF-DT/STATUS   BATCH-NUM
  GUILTYPLEA   10/27/04      06        JM     $60    CR$     PRTL PKT      0413290292
  FAIL$-FINE   10/25/04      **        ***    ***            11/22/04      0411299080
  FINE PAID    02/17/06      11        GLH    $50    CR$     CLOSED        C4031711V91

                                                     END OF HISTORY

ACTION:
CLEAR=PREV SCRN; CMD1=HELP; CMD2=LIC SUM; CMD4=REG SEARCH; CMD7/CMD8=BGBK/FWD
    TICKET IS CLOSED - ONLY VALID RESPONSE TO RETURN WITH IS: 0
```

Code Credit Card

**EXHIBIT C**

# CRIMINAL COURT OF THE CITY OF NEW YORK
## COUNTY OF NEW YORK

Page 1 of 1

4/4/06 on/nl
Part B
5/11/2006

THE PEOPLE OF THE STATE OF NEW YORK — MISDEMEANOR
-against-

1. Stephanie Calla (F 34)


626300

Defendant.

Police Officer Luis Diaz, shield 08006 of the Patrol Boro Manhattan South Task Force, states as follows:

On March 7, 2006, at about 23:00 hours in front of 27 Saint Mark's Place in the County and State of New York, the Defendant committed the offenses of:

1. VTL511(1)(a)   Aggravated Unlicensed Operation in the Third Degree
                  (1 count)
2. VTL509(1)      Unlicensed Driving
                  (1 count)

the defendant operated a motor vehicle upon a public highway while having reason to know that his license and privilege of operating such vehicle in this state and his privilege of obtaining such a license was suspended and revoked; and the defendant operated a motor vehicle upon a public highway without being duly licensed.

The offenses were committed under the following circumstances:

Deponent states that he observed the defendant operating a motor vehicle (the key was in the ignition, the engine was running and defendant was behind the wheel) on a public highway, to wit the above location. Deponent states that he conducted a computer check of the records of the New York State Department of Motor Vehicles which revealed that defendant's license was suspended and has not been reinstated. Deponent further states that his basis for believing that the defendant had reason to know her license was suspended is as follows: the computer check revealed that defendant's license was suspended for failure to pay a New York summons and all such summons have printed on them, "If you do not answer this ticket by mail within fifteen (15) days your license will be suspended." The suspension occurs automatically (by computer) within 4 weeks of the defendant's failure to answer.

False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.

_____    3/8/06  940
Deponent                    Date and Time

ACT 5 Version 4.2.0 Created on 03/08/06 9:36 AM

6/27 Part B
7/20 Part B def